## Dishman v. Umberhour.

(Decided May 16, 1922.)

### Appeal from Warren Circuit Court.

1. Partnership—Transactions in Scope of Partnership.—Where a partnership contract is general and includes every transaction which the individual partners may have in that particular line

of business in which the partnership is engaged, every trade or deal made by a partner within the scope of the partnership business will be declared for the use and benefit of the firm.

2.  Partnership—Oil and Gas Lease.—A partnership composed of D. and U. was organized for the purpose of acquiring and selling oil and gas leases in a certain locality in Warren county. The terms of the verbal partnership agreement appear to indicate a purpose on the part of the members of the firm to acquire only such leases as the two members of the firm might mutually agree to take at their joint expense; under such an agreement oil leases taken in another part of the county by a member of the firm for himself or another, without the knowledge or consent of the other member of the partnership without expense to the firm, do not become the property of the partnership, nor is the other partner entitled to participate in the profits arising from such leases.

GEORGE H. GALLOWAY, T. W. & R. C. P. THOMAS and J. FRANKLIN CORN for appellant.

E. W. EDWARDS for appellee.

Opinion of the Court by Judge Sampson—Reversing.

This appeal is from a judgment of the Warren circuit court, holding appellee Umberhour entitled to participate in the profits arising from the sale of two oil leases by appellant Dishman to the Big Jack Oil & Development Company. Alleging that he and appellant Dishman were partners and engaged in the business of taking and selling oil leases in Warren county, appellee Umberhour brought this suit to be adjudged the owner of a one-thirty-second interest in and to the oil and gas produced from the A. A. McGinnis 300-acre lease and the J. A. Turner 100-acre lease which were granted by the said landowners to one McAndrews and afterwards transferred by McAndrews to the Big Jack Oil & Development Company, and on which oil and gas in paying quantities were thereafter discovered. According to the evidence of appellee Umberhour some time about the first of April, 1919, he approached and became acquainted with appellant Dishman at a hotel in Bowling Green, and a partnership agreement was entered into between them whereby they were to buy and trade in oil and gas leases. His testimony upon the subject is as follows:

"Q. What was that agreement? State it in full. A. Well, I said to defendant (Dishman), I asked him if he would not like to take up some oil leases with me, that I

knew where I thought I could get some, and he said he would. So we made a verbal agreement to that effect.

"Q. Did you at that time agree to divide the profits and share the losses? A. Yes, we made an agreement that we go in as partners, and share each alike.

"Q. After you and defendant made this agreement, state whether or not you succeeded in taking any leases? A. Yes, sir, we taken some."

The defendant sets forth three or four leases taken by them jointly on the north side of the river in Warren county and the Tom Covington lease on the other side of town. All these were taken in April, 1919. Both the names of Dishman and Umberhour appear as grantees in all these leases. On cross-examination appellee Umberhour was asked:

"Q. When and where was it that you had this conversation that you had with the defendant touching taking the leases together? A. It was down at the Mansard hotel, and he was sitting in there in a chair this side of the hotel, and I mentioned it to him there that I thought we could get some leases together and he said he would do it, and I told him I thought I knew of some we could get over there, and he said he would start out, he would hire a conveyance and would come out there, I was in the country, and we would go see what we could do, and he did come out and we got in and went down and saw Mrs. Hudgens and she agreed to lease her property to us for two years and I told the defendant as we came back to take a notary public and have the lease signed up and he said he would, and I would pay half of the expenses, and on the first day of April, I think it was, he took the notary public out and had the lease drawn up, and after that we took the others."

It appears that appellee Umberhour resided about two and one-half miles from Bowling Green in the neighborhood to which he referred when he approached appellant Dishman, and suggested that they go over and get oil and gas leases. Dishman lived in Bowling Green. All the leases obtained through the partnership arrangement at that time were near the home of appellee, except the Tom Covington lease which lay several miles away and which was obtained by appellant Dishman in his own name, but afterwards on the request of appellee the latter was given one-half interest in the Covington lease. So far as the record shows there was little or no money put up by the partnership, at least nothing more than expenses such

as were incurred by the employment of a rig or automobile and a notary public.

Appellant Dishman testifies that he and appellee Umberhour entered into an arrangement at the time and place mentioned by Umberhour whereby they were to obtain some leases in the neighborhood of Umberhour's home and were to sell them and divide the profits, and this, he says, they did, but he says it was not a general partnership intended to include all of the transactions which either of them might have with or concerning oil and gas leases. Whether this be so is the crucial question in the case. If, as contended by appellee Umberhour, the partnership was a general one under which they each undertook that they would take and acquire oil and gas leases at their joint expense and to sell or otherwise dispose of them and divide the profits equally, then appellee Umberhour is entitled to participate in the profits arising from the sale of the Turner and McGuire leases under the facts which show that they were acquired by McAndrews through the aid and assistance of appellant Dishman in the following way: McAndrews was an oil operator and stranger at Bowling Green when Dishman approached him some time in the early part of April, and told him that he and Umberhour were partners and owned certain oil and gas leases north of the river and could acquire other leases and induced McAndrews to go with him and Umberhour to look at the leases which they had theretofore acquired, and to enter into an arrangement with them whereby McAndrews agreed to take the said leases and to drill and develop them and give to Dishman and Umberhour as consideration for the assignment of the leases a one-eighth royalty; that thereafter Dishman, without the knowledge of appellee Umberhour, went with McAndrews into another part of Warren county to look at the Tom Covington lease and after they had viewed it McAndrews asked Dishman if there were any other leases in that vicinity which they could acquire, and being told by Dishman that he believed they could acquire certain leases they applied to Turner, Campbell and McGinnis for leases, and after negotiating with those landowners acquired the two leases now in controversy, the same being granted to McAndrews, Dishman's name not appearing in the lease until afterwards when McAndrews, or some one for him, and

at his suggestion wrote on or across the face of the lease the words "J. T. Dishman has an interest in this lease." The consideration for these leases was paid by McAndrews to the landowners. Said leases afterwards through development became valuable, but before development was started the oil company, to whom McAndrews had assigned the leases, declined to carry appellant Dishman for a one-eighth interest, but offered to develop the leases and carry him for a one-sixteenth. To this he agreed. After development the company proposed to buy his interest in the leases and to give him $5,000.00 therefor. He was paid $2,500.00 in cash and a note for $2,500.00 was placed in escrow, pending the settlement of the claim of appellee Umberhour, who about that time learned for the first time that Dishman had an interest in said leases and began to claim that the leases were the property of the partnership, or at least the interest which Dishman retained in the leases belonged to the partnership and not to Dishman alone. Appellee Umberhour admits that he had never heard, up to that time, that Dishman had any interest in the McGinnis or Turner leases. He says he first learned of his interest in said leases through McAndrews at or about the time Dishman contracted to sell his one-sixteenth interest in the oil for $5,000.00. He also says that McAndrews suggested to him that he bring suit against Dishman for his interest on the theory that the interest retained by Dishman belonged to the partnership. Acting upon that suggestion he instituted this action, and McAndrews became one of his strongest witnesses. It is testified to by McAndrews that on different occasions before and after the taking of the McGinnis and Turner leases appellant Dishman stated to him that he and appellee Umberhour were partners in the lease business. It is proven by McGinnis and Turner and other persons present at the time of the making of the lease contracts in question that the leases were made direct to McAndrews without any thought or purpose to grant any interest whatever to Dishman or Umberhour; that Umberhour was not present and that his name was not mentioned; that the consideration was paid by McAndrews and that Dishman did not at the time claim any interest; that his interest was granted to him by McAndrews after the leases had been fully executed and delivered to McAndrews.

Conceding that each member of a partnership is the agent of the other and that one partner acting within the scope of the partnership business cannot acquire interests for himself adverse to the firm, and that if he does so he may be required to account to the partnership for all profits or benefits thus obtained, these well recognized rules, it must be admitted, cannot be applied where the partnership, though fully proven, was formed for a special purpose not embracing the transaction in question. If the partnership between Dishman and Umberhour was general and intended to and did in fact embrace and include all transactions, trades and dealings of each partner in oil and gas leases, then unquestionably Umberhour is entitled to share in the profits from the McGinnis and Turner leases, but if the partnership was formed for a special and limited purpose and not intended to embrace every transaction in oil and gas leases which either of said parties might have or make with others but to be confined to certain limits, then Umberhour is not entitled to participate in said profits because those leases were not taken for or on behalf of the partnership. Taking the evidence of appellee Umberhour and considering it in the most favorable light to him, it gives the impression that he approached Dishman and suggested the taking of oil and gas leases with intention of engaging in the business with Dishman in a particular neighborhood or district in Warren county, to-wit: that lying around and near the old home place of Umberhour. According to his evidence he told Dishman that he thought he knew where he could get *some* leases. These *some* leases were in the neighborhood of the home of Umberhour which was about two and one-half miles from Bowling Green. In the same conversation he says he told Dishman that he was sure he could get a lease on the lands of Mrs. Hudgins, who lived next neighbor to him, and he thought he could get other leases there. No suggestion was made that they try to get leases in any neighborhood or district except that suggested by appellee Umberhour. Neither of the parties put up any money or did anything which indicated that they expected to continue the partnership indefinitely or for any particular time, but the whole purpose appears to have been for the two men to obtain such leases in the neighborhood suggested by Umberhour as they could obtain upon such terms and conditions as were mutually agreed upon between them.

It is quite apparent from all the testimony that neither Dishman nor Umberhour expected to incur any expenses more than nominal in the business, and it is equally plain that neither of them had the right or authority under the partnership arrangement to go out and obtain leases and incur expenses without the consent and acquiescence of the other. What leases they obtained were granted to them both after full consultation and at their joint expense. True, at a later period Dishman obtained the Tom Covington lease and at the request of appellee took him in on that lease, but this does not appear to have been done as a matter of right under the partnership arrangement but only at the request of appellee, the lease at the time being considered of only nominal value. We conclude that while there was a partnership arrangement that it was a special and limited one looking to the acquisition of only such leases as the partners might mutually agree to obtain at their joint expense and was not general in its terms allowing either partner as the agent of the partnership to acquire leases and incur obligations for which the partnership would be liable. Considered in this light the evidence can all be harmonized, otherwise it is irreconciliable. Even the evidence of appellee Umberhour, when considered in its most favorable light to him, does not disturb this conclusion.

For these reasons the judgment is reversed with directions to dismiss the petition.

Judgment reversed.